LAW OFFICE OF MICHAEL JAY GREEN
  MICHAEL JAY GREEN        4451
*-and-*
LAW OFFICE OF BRIAN K. MACKINTOSH
  BRIAN K. MACKINTOSH       9525
841 Bishop Street, Suite 2201
Honolulu, Hawaii 96813
Telephone: (808) 521-3336
Facsimile:  (808) 566-0347

Attorneys for Plaintiffs:
NENA ANSAGAY, on behalf of herself,
THE ESTATE OF BENJAMIN O.K.
ANSAGAY, and their minor child, K.A.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| NENA ANSAGAY, on behalf of herself, THE ESTATE OF BENJAMIN O.K. ANSAGAY, and their minor child, K.A.,<br><br>    Plaintiffs,<br><br>    vs.<br><br>DOW AGROSCIENCES, LLC; DOE CORPORATION 1, DOES 2-100,<br><br>    Defendants. | CIV. NO. 15-00184 SOM-RLP<br><br>PLAINTIFF'S MOTION IN OPPOSITION TO DEFENDANT DOW AGROSCIENCES LLC'S MOTION FOR SUMMARY JUDGMENT; CERTIFICATE OF SERVICE<br><br><br>Trial Date: August 30, 2016 |

PLAINTIFF'S MOTION IN OPPOSITION TO DEFENDANT DOW
AGROSCIENCES LLC'S MOTION FOR SUMMARY JUDGMENT

On September 28, 2015, Defendant DOW AGROSCIENCES LLC

("DOW") argued in its Motion for Summary Judgment on September 28, 2015, that "[t]he EPA has recently reviewed the scientific literature Plaintiffs reference in their Complaint, among other data, and it disagrees with Plaintiff's conclusions [that DOW's product DURSBAN, containing the chemical chlorpyrifos, caused debilitating illness and death for the pesticide applicator, Benjamin O.K. Ansagay.]" DOW AGROSCIENCES MEMORANDUM IN SUPPORT OF MOTION ("DOW's MEMO"), Dkt. 16-1, at 3. On October 30, 2015, the Ninth Circuit Court of Appeals found that the Environmental Protection Agency's failure to address the continuing safety concerns regarding chlorpyrifos was "egregious and warrants mandamus relief." *In re: Pesticide Action Network North America, et al. v. U.S. Environmental Protection Agency*, Civ. No. 14-72794, Opinion issued on August 10, 2015 at 2 (attached to Declaration of Brian K. Mackintosh ("Mackintosh Dec." as Ex. 1).

In response, the EPA announced in the Federal Register that "[a]t this time, the agency is unable to conclude that the risk from aggregate exposure from the use of chlorpyrifos meets the safety standard of section 408(b)(2) of the Federal Food, Drug, and Cosmetic Act (FFDCA). Accordingly, EPA is proposing to revoke all tolerances for chlorpyrifos." EPA, 80 Fed. Reg. 69080 (proposed Nov. 6, 2015) (to be codified at 40 CFR pt. 180) (attached as Ex. 2 to Mackintosh Dec.).

Chlorpyrifos has finally been banned in the United States. The real question is whether DOW can be held accountable for the decades of damage it did with its dangerous product.

1.  <u>Because DOW and its agents made express and implied warranties of safety that exceeded the language approved by the EPA, FIFRA immunity does not apply.</u>

DOW and its agents made express and implied warranties of safety greater that exceeded the language approved by the EPA. *See* Federal Insecticide, Fungicide, and Rodenticide Act, ("FIFRA") 7 U.S.C. §§ 136a(c)(1)(C), (F) (requiring a manufacturer seeking to register a pesticide to submit a proposed label to EPA). BENJAMIN O.K. ANSAGAY ("ANSAGAY") relied on those warranties of safety in his handling of the product, and because of his reliance on those express and implied warranties, ANSAGAY's chlorpyrifos exposure caused lung cancer, depression, and infertility. Because Defendant's agents adopted language separate and apart from the written warning labels, FIFRA preemption does not apply. *Bates v. Dow Agrosciences L.L.C.*, 544 U.S. 431, 444 fn. 17 (U.S. 2005).

In the mid 1980s, chlordane dominated the termiticide application industry. "Chlordane . . . was the old super-strong chemical that lasted over 20 years on application." ANSAGAY Deposition, Feb. 28, 2014 at 37:3-6 (attached as Ex. 3 to

3

Brian K. Mackintosh's Declaration in Support of Plaintiff's Motion to File First Amended Complaint ("Plaintiff's FAC Motion"), filed on Nov. 16, 2015, Dkt. 20). But in 1988, the EPA banned chlordane and DOW had to educate its costumers in the use of its new product, Dursban. *Id.* As DOW's agents, employees, and distributors explained the benefits of Dursban over chlordane, they made representations to ANSAGAY and his co-workers that far exceeded the cautionary labeling advice found in writing on the Dursban canisters.

Chuck Otsuka, worked with ANSAGAY as a ground-crew termiticide applicator during the time they were introduced to Dursban. He declares with no uncertainty that the chemical distributors that instructed them on Dursban's use stated that, "if [Dursban] got in your system it would flush out of your system within one week." Chuck Otsuka Declaration, ¶3, attached in support of Plaintiff's FAC Motion. ANSAGAY also recalls the contrast that DOW's agents and distributors made between Chlordane and Dursban. He

As ANSAGAY explained in his deposition, the "chemical reps" that distributed Dursban told him that it was safe. ANSAGAY Depo, 46:8-9. He recalled

> I remember them telling us that, you know, [Dursban is] really, really safe, that's why they took chlordane off the market; and E.P.A. wouldn't allow anything that the

4

>body couldn't flush out.
>And when I started, my manager and my supervisor, all of the lead men for the crews, nobody had a respirator, nobody used it. And I was trained and taught that way. So in my mind, even though I read the label, you know, I though it was okay because everybody else around me, and that was above me, they never used it. Nobody had it.
>I was young. I was only 19, 20 years old when I started. I just did what they told me to do and I followed everything the way they did it. Never questioned it.

ANSAGAY Depo at 46:9-25.

ANSAGAY and those working with him relied on what they were told by the chemical representatives regarding the safety of the product. They were told that it would flush from an applicator's system within one week. Relying on those oral representations and warranties of safety, ANSAGAY did as he was told and neglected to follow the EPA approved warning labels. The exposure to Dursban, at that time and because of those representations, caused the death and illnesses that plagued ANSAGAY thereafter.

In a similar suit against DOW the Supreme Court found that oral warranties fall outside of any claim to FIFRA preemption. It ruled that

>To the extent that petitioners' warranty and fraud claims are based on oral representations made by Dow's agents, they fall outside the text of ß 136v(b) . . . .  Because FIFRA defines labeling as "all labels and all other written,

5

> printed, or graphic matter" that accompany a pesticide, § 136(p)(2), any requirement that applied to a sales agent's *oral* representations would not be a requirement for "labeling or packaging."

*Bates v. Dow Agrosciences L.L.C.*, 544 U.S. 431, 444 fn. 17 (U.S. 2005).

Because DOW and its agents made express and implied warranties of safety that exceeded the language approved by the EPA, FIFRA immunity does not apply.1

2. <u>FIFRA Preemption does not apply to common law claims</u>

FIFRA's pre-emption statute states that, "Such state shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this Act." 7 U.S.C. § 136v(b). Prior to 2005, many courts, including the District of Hawaii interpreted this statute to provide

---

1 ANSAGAY's co-worker, James Tamura identifies the chemical representatives that sold Dursban to Xtermco, ANSAGAY's employer, as VAN WATERS [& ROGERS CORPORATION] and BREWER ENVIRONMENTAL [INDUSTRIES
> 19. As recently as March 2003 DOW's internet site included the statement: "Consumer exposure from labeled us[e] of chlorpyrifos products provides wide margins of safety for both adults and children.
> 20. DOW also published claims that "no significant adverse health effects will likely result from exposures to Dursban, even at levels substantially above those expected to occur when applied at label rates.
> . . . .
> 22. DOW intended DOE CORPORATION [BREWER] and the end user of its product, Dursban, to rely on the express and implied warranties, and those similar to them…

6

broad federal pre-emption over all tort and state law claims.

Torts such as negligent testing essentially became negligent failures to warn, under this reading, thereby precluding any redress due to federal preemption. The Hawaii court reasoned that that

> negligent testing claims based on a failure to warn theory are preempted by FIFRA, because such claims require a showing that the manufacturer should have included additional or more clearly stated warnings. Id. A negligent testing claim will be deemed a disguised failure to warn claim if the manufacturer could remedy the problems that would have been revealed by adequate testing with alterations to the product's label.

*Akee v. Dow Chem. Co.*, 2003 U.S. Dist. LEXIS 17737 (D. Haw. July 21, 2003). Similarly, State law statutory protections for wrongful death or products liability were read under the rubric of "failure to warn" and, therefore, pre-empted. *Id.* In reaching these conclusions, the *Akee* court relied in part on a Fifth Circuit decision that found "FIFRA pre-empts state law claims that wither directly *or indirectly* impose different labeling requirements." *Akee v. Dow Chem. Co.*, 272 F. Supp. 2d 1112, 1125 (D. Haw. 2003) (citing *Dow Agrosciences LLC v. Bates*, 332 F.3d 323, 329 (5th Cir. 2003) (emphasis added).

The Supreme Court reversed this expansive interpretation of FIFRA's warning requirements and affiliated pre-emption immunity when it reversed the

*Bates* decision it drew on. The Court found that common law and statutory claims remain as long as the labeling requirements, if any, do not contradict the labeling requirements endorsed by the EPA.

> The long history of tort litigation against manufacturers of poisonous substances adds force to the basic presumption against pre-emption. If Congress had intended to deprive injured parties of a long available form of compensation, it surely would have expressed that intent more clearly.

*Bates v. Dow Agrosciences L.L.C.*, 544 U.S. 431, 449-450 (U.S. 2005) (citing *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 251, 78 L. Ed. 2d 443, 104 S. Ct. 615 (1984).

In fact, the Supreme Court held that preserving damages provided by common law and state statute strengthen FIFRA's policy ambitions.

> By encouraging plaintiffs to bring suit for injuries not previously recognized as traceable to pesticides such as [the pesticide there at issue], a state tort action of the kind under review may aid in the exposure of new dangers associated with pesticides. Successful actions of this sort may lead manufacturers to petition EPA to allow more detailed labelling of their products; alternatively, EPA itself may decide that revised labels are required in light of the new information that has been brought to its attention through common law suits. In addition, the specter of damage actions may provide manufacturers with added dynamic incentives to continue to keep abreast of all possible injuries stemming from use of their

8

>> product so as to forestall such actions through product improvement.

*Bates v. Dow Agrosciences L.L.C.*, 544 U.S. 431, 451 (2005) (quoting *Ferebee v. Chevron Chemical Co.*, 736 F.2d 1529, 1541-1542).

Just because damages available under state law claims may induce companies to change their warnings does not, ipso facto, make it a case about inadequate warnings preempted by FIFRA.

> For a particular state rule to be pre-empted, it must satisfy two conditions. First, it must be a requirement "for labeling or packaging"; rules governing the design of a product, for example, are not pre-empted. Second, it must impose a labeling or packaging requirement that is "in addition to or different from those required under this subchapter." A state regulation requiring the word "poison" to appear in red letters, for instance, would not be pre-empted if an EPA regulation imposed the same requirement.

*Bates v. Dow Agrosciences L.L.C.*, 544 U.S. 431, 444 (U.S. 2005).

After-the-fact motivations by a pesticide manufacturer to change a label that because of a large jury verdict, for instance, are not "requirements" under FIFRA, they are merely strong motivations. *Id*. at 443. . "The FIFRA cannot be interpreted to allow a manufacturer to avoid tort liability merely by placing a disclaimer on a label. In other words, a manufacturer of a fungicide cannot escape tort liability by placing a disclaimer on a label and then claiming preemption under the FIFRA."

9

*Kawamata Farms v. United Agri Prods.*, 86 Haw. 214, 240-241, 948 P.2d 1055, 1081-82 (Haw. 1997).

3.  <u>The Complaint does not allege any Counts that require additional or different warning labels. No Count is pre-empted by FIFRA.</u>

The Complaint alleges nine separate statutory or common law Counts, none of which require additional or different warning labels. No Count, therefore, is pre-empted by FIFRA. Count VII, for instance, asserts a design defect cause of action. The case relied on by DOW did not address

> state design-defect claims that parallel the federal misbranding statute. The misbranding statute requires a manufacturer to pull even an FDA-approved drug from the market when it is "dangerous to health" even if "used in the dosage or manner, or with the frequency or duration prescribed, recommended, or suggested in the labeling thereof." 21 U. S. C. §352(j); cf. Bates v. Dow Agrosciences LLC, 544 U. S. 431, 447, 125 S. Ct. 1788, 161 L. Ed. 2d 687 (2005) (state-law pesticide labeling requirement not pre-empted under express pre-emption provision, provided it was "equivalent to, and fully consistent with, [federal] misbranding provisions"). The parties and the Government appear to agree that a drug is misbranded under federal law only when liability is based on new and scientifically significant information that was not before the FDA. Because the jury was not asked to find whether new evidence concerning sulindac that had not been made available to the FDA rendered sulindac so

> dangerous as to be misbranded under the [***28] federal misbranding statute, the misbranding provision is not applicable here. Cf. 760 F. Supp. 2d 220, 233 (NH 2011) (most of respondent's experts' testimony was "drawn directly from the medical literature or published FDA analyses").

*Mut. Pharm. Co. v. Bartlett*, 133 S. Ct. 2466, 2477 (U.S. 2013).

Here, the regulatory body is the EPA, and as the EPA has recently pulled all use of Chlorpyrifos as unsafe due to new evidence, the design defect cause of action must survive a motion to dismiss.

The other case relied on by Defendants, *PLIVA, Inc. v. Mensing*, 131 S. Ct. 2567 (2011), addressed only generic drug manufacturer's prohibition for altering the content of their medication, as their labels and ingredients are required to mirror the brand-name competitors. In this instance, DOW is the brand name competitor, and could have altered the ingredient of its pesticide.

> To find plaintiffs' failure-to-warn claims preempted, the court would have to extend *Mensing* and *Bartlett*; that is, it would have to hold that the reasoning the Supreme Court used in those cases to preempt state-law claims against generic manufacturers compels the conclusion that state-law claims against brand-name drug distributors are also preempted. The parties do not identify any binding authority or authority from California extending Mensing or Bartlett in that way. Thus, while the argument that distributors of brand name drugs are the same as generic

11

      manufacturers may be persuasive, "unless and until this rationale is extended," it is not obvious that plaintiffs have no claim against McKesson under California law because of a preemption defense.

*Hatherley v. Pfizer, Inc.*, 2013 U.S. Dist. LEXIS 93943, 19-20 (E.D. Cal. July 3, 2013) (citations omitted).

4.    <u>Conclusion.</u>

      For the reasons argued above, Plaintiff NENA ANSAGAY, on behalf of herself, THE ESTATE OF BENJAMIN O.K. ANSAGAY, and their minor child, K.A., urges the court to deny DOW's Motion to Dismiss.

DATED: Honolulu, Hawaii this November 23, 2015.

                                                  /s/ *Brian K. Mackintosh*
                                                MICHAEL J. GREEN
                                                BRIAN K. MACKINTOSH
                                                Attorneys for Plaintiff
                                                NENA ANSAGAY, on behalf of herself,
                                                THE ESTATE OF BENJAMIN O.K.
                                                ANSAGAY, and their minor child, K.A.